**CARUSO GLYNN, LLC**
242-03 Northern Blvd.
Suite 201
Little Neck, New York 11362
(718) 570-3338
Attorney: Lawrence C. Glynn (LG 6431)
File No.:  88.080125.01


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

CARUSO GLYNN, LLC,                                    Case No.:      Civ.        (    )

                        Plaintiff,

                                                      **VERIFIED**
            -against-                                 **COMPLAINT**


LIBERTY CORPORATE CAPITAL LTD.,
TALBOT 2002 UNDERWRITING CAPITAL LTD.,
AXIS CORPORATE CAPITAL UK II LTD. f/k/a
NOVAE CORPORATE UNDERWRITING LTD.,
APRILGRANGE LIMITED,
F&G UK UNDERWRITERS LIMITED,
AXIS CORPORATE CAPITAL UK LTD,
CATLIN SYNDICATE LTD.,
BRIT UW LTD.,
MARKEL CAPITAL LIMITED,
QBE CORPORATE LTD.,
AON and RIVIANA FOODS INC.,

                        Defendants.
---------------------------------------------------------------x


        Plaintiff, **CARUSO GLYNN, LLC** ("Caruso Glynn" or "Plaintiff") complaining of the Defendants

alleges upon information and belief, as follows:

                                **Parties**

        1.      At all material times, Plaintiff was a New York, sole member, limited liability corporation

with a principal place of business located at 242-03 Northern Blvd., Suite 201, Little Neck, New York

11362.

2.     At all material times, defendant LIBERTY CORPORATE CAPITAL LTD. was and now is a corporation or other business entity existing under the laws of the United Kingdom with a principal place of business located at 20 Fenchurch Street, London, EC3M 3AW, United Kingdom.

3.     At all material times, defendant LIBERTY CORPORATE CAPITAL LTD. was and now is the sole member of Syndicate No. 4472.[1]

4.     At all material times, defendant TALBOT 2002 UNDERWRITING CAPITAL LTD. was and now is a corporation or other business entity existing under the laws of the United Kingdom with a principal place of business located at 60 Threadneedle Street, London, EC2R 8HP, United Kingdom.

5.     At all material times, defendant TALBOT 2002 UNDERWRITING CAPITAL LTD. was and now is the sole member of Syndicate No. 1183.

6.     At all material times, defendant AXIS CORPORATE CAPITAL UK II LTD. f/k/a NOVAE CORPORATE UNDERWRITING LTD., was and now is a corporation or other business entity existing under the laws of the United Kingdom with a principal place of business located at 52 Lime Street, London, EC3M 7AF, United Kingdom.

7.     At all material times, defendant AXIS CORPORATE CAPITAL UK II LTD. f/k/a NOVAE CORPORATE UNDERWRITING LTD. was and now is the sole member of Syndicate No. 2007.

8.     At all material times, defendant APRILGRANGE LIMITED was and now is a corporation or other business entity existing under the laws of the United Kingdom with a principal place of business located at One Creechurch Place, Creechurch Lane, London, EC3A 5AF, United Kingdom.

---

[1] Syndicates are not legal entities. They are similar to unincorporated associations with their business run by managing agents, which retain no share of the risk. Managing agents are effectively service companies. The subscribers retain the actual risk and are the insurers. To be an insurer in the Lloyd's market, one must be a U.K. taxable entity, which is not the same as citizenship under U.S. jurisprudence.

9.     At all material times, defendant APRILGRANGE LIMITED was and now is one of two members of Syndicate No. 5000.

10.     At all material times, defendant F&G UK UNDERWRITERS LIMITED was and now is a corporation or other business entity existing under the laws of the United Kingdom with a principal place of business located at One Creechurch Place, Creechurch Lane, London, EC3A 5AF, United Kingdom.

11.     At all material times, defendant F&G UK UNDERWRITERS LIMITED was and now is one of two members of Syndicate No. 5000.

12.     At all material times, defendant AXIS CORPORATE CAPITAL UK LTD was and now is a corporation or other business entity existing under the laws of the United Kingdom with a principal place of business located at 52 Lime Street, London, EC3M 7AF, United Kingdom.

13.     At all material times, defendant AXIS CORPORATE CAPITAL UK LTD was and now is the sole member of Syndicate No. 1686.

14.     At all material times, defendant CATLIN SYNDICATE LTD. was and now is a corporation or other business entity existing under the laws of the United Kingdom with a principal place of business located at 20 Gracechurch Street, London, EC3V 0BG, United Kingdom.

15.     At all material times, defendant CATLIN SYNDICATE LTD. was and now is the sole member of Syndicate No. 2003.

16.     At all material times, defendant BRIT UW LTD. was and now is a corporation or other business entity existing under the laws of the United Kingdom with a principal place of business located at The Leadenhall Building, 122 Leadenhall Street, London, EC3V 4AB, United Kingdom.

17.     At all material times, defendant BRIT UW LTD., was and now is the sole member of Syndicate No. 2987.

3

18.     At all material times, defendant MARKEL CAPITAL LIMITED was and now is a corporation or other business entity existing under the laws of the United Kingdom with a principal place of business located at 20 Fenchurch Street, London, EC3M 3AZ, United Kingdom.

19.     At all material times, defendant MARKEL CAPITAL LIMITED, was and now is the sole member of Syndicate No. 3000.

20.     At all material times, defendant QBE CORPORATE LTD. was and now is a corporation or other business entity existing under the laws of the United Kingdom with a principal place of business located at 30 Fenchurch Street, London, EC3M 3BD, United Kingdom.

21.     At all material times, defendant QBE CORPORATE LTD. was and now is the sole member of Syndicate No. 1036.

22.     At all material times, defendant AON was and now is a corporation or other business entity existing under the laws of the United Kingdom with a principal place of business located at The Aon Centre, 122 Leadenhall Street, London, EC3V 4AN, United Kingdom.

23.     At all material times, defendant RIVIANA FOODS INC. was and now is a Delaware corporation with a principal place of business located at 2777 Allen Parkway, Suite 1500, Houston, Texas 77019.

## Jursidiction

24.     This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 because the parties, including all syndicates and named subscribers to said syndicates, are citizens of different states and the amount in controversy exceeds $75,000.00.

25.     This is an action to recover plaintiff's reasonable attorney's fees in *quantum meruit*.

**Background**

26.    On or about March 20, 2018, Plaintiff was assigned to handle a subrogation recovery on behalf of all of the named defendants stemming from a fire at the Monee Warehouse, Monee, IL, which occurred on June 12, 2017 and which lead to damages to cargo owned by defendant Riviana in the amount of $2,261,459.85.

27.    Following the adjustment of the loss by defendant Aon and the two lead underwriters, defendants Liberty and Talbot, Riviana was reimbursed in the amount of $2,079,173.99.

28.    Plaintiff was engaged by Defendants' third-party vendor, Barbuss Global, to handle the subrogation action on behalf of both Riviana and the named underwriter defendants.

29.    At all material times, non-party Barbuss Global was a recovery agent approved by defendant Aon and Lloyd's Underwriters, including those named herein as defendants, to engage in recovery actions and hire counsel across the globe to assist in the recovery of insurance payments made on behalf of Lloyd's insureds.

30.    Plaintiff was engaged by Barbuss, with the approval and authority of all named defendants, to act on a contingency fee basis of 8.5% of the gross amount recovered plus out of pocket expenses. A copy the final email exchange with Barbuss culminating in an agreement to handle this matter on a contingency fee of 8.5% is annexed hereto as Exhibit A.

31.    There is no retainer agreement between Plaintiff and any of the defendants.

32.    Plaintiff filed suit on behalf of Riviana Foods, Inc. and its subrogated underwriters on July 26, 2018 in the matter captioned *Riviana Foods, Inc. And Its Interested Subrogated Underwriters v. Jacobson Warehouse d/b/a XPO Logistics Supply Chain* in the Southern District of New York, Case No.:

5

18 Civ. 6692(KMK) which was transferred to the Northern District of Illinois shortly thereafter pursuant to 28 U.S.C. §1404(a) and bears the docket number 18 Civ. 6550 (MMP).

33.     The cause of action against GXO was for breach of a certain Materials Services Handling Agreement ("MHSA"), a copy of which is annexed hereto as Exhibit B, by GXO's failure to preserve the cargo owned by Riviana in the same good order and condition as when received.

34.     Plaintiff handled the matter through pleadings and extensive discovery over the span of 7 plus years. The case is still ongoing.

35.     Plaintiff participated in extensive motion practice including, but not necessarily limited to, four separate motions to dismiss, cross-motions for summary judgment between Riviana/underwriters and GXO, a motion for leave to amend, a motion for sanctions and a motion to compel.

36.     Plaintiff successfully defeated defendant's 12(b)(6) motion to dismiss. See *Riviana v. GXO Warehouse f/k/a XPO Logistics Supply Chain f/k/a Jacobson Warehouse* (n/k/a GXO Warehouse Company, Inc." and hereinafter referred to as "GXO"), Case No. 18 Civ. 6550 [Dkt. Nos. 75 & 76].

37.     Plaintiff successfully moved for summary judgment on behalf of Defendants and defeated GXO's motion for summary judgment. *Id.* at Dkt. No. 221 dated July 25, 2024.

38.     Following the successful result procured by Plaintiff's efforts in not only defeating GXO's motion for summary judgment but winning on summary judgment on the issue of liability on behalf of underwriters and Riviana, the only remaining issue to be decided by the Court is the quantum of damages suffered by Riviana and its Subrogated Underwriters, all of whom are named as defendants in this action.

39.     Shortly after a hearing on July 9, 2025, one which Liberty (and the underwriters on whose behalf Liberty was authorized to act) required plaintiff to attend, on July 15, 2025, Rob Hawes of defendant Liberty advised as follows:

We await Lawrence's detailed summary of the [July 9, 2025] hearing and his response to the issues raised by Fields Howell and above. **However we wish to press ahead with Walker Wilcox overseen by Fields Howell to continue the litigation. I am sure we can make arrangements for a professional handover and a reasonable discussion on remuneration.**

40.    Despite the undersigned's best efforts, Mr. Hawes, on behalf of Liberty and all named defendants, has not engaged in any further reasonable discussion despite his offer to do so.

41.    The undersigned traveled to Chicago on July 8, 2025 to attend an in-person oral argument before Judge Martha Pacold on July 9, 2025 regarding a motion for leave to amend the Case Management Order and to file an amended answer to add an affirmative defense and a motion for sanctions brought against GXO.

42.    The undersigned incurred travel expenses associated with the July 9, 2025 court appearance consisting of air fare ($646.96), hotel ($443.00) and Lyft expenses ($122.49) totaling $1,212.45.

43.    The undersigned traveled to Chicago on January 20, 2025 to attend an in-person hearing before Magistrate Jeannice Appenteng regarding numerous discovery issues on January 21, 2025.

44.    The undersigned incurred travel expenses associated with the January 21, 2025 court appearance consisting of air fare ($756.78), hotel ($29.36) and Lyft expenses ($133.23) totaling $919.37.

45.    The undersigned traveled to Chicago on July 23, 2025 to attend oral argument on the cross-motions for summary judgment on July 24, 2025.

46.    The undersigned incurred unreimbursed travel expenses associated with the July 24, 2024 court appearance consisting of Lyft expenses $157.05. A copy of all receipts for travel expenses is annexed hereto as Exhibit C.

47.    The undersigned incurrred unreimbursed expenses to hire local counsel in Chicago for $1,250.00. A copy of Plaintiff's invoice for hiring local counsel is annexed hereto as Exhibit D.

47.    In prosecuting this recovery action on behalf of all defendants, and with defendants' full knowledge, the undersigned expended 988.2 hours. A copy of Plaintiff's contemporaneous time records in this matter is annexed hereto as Exhibit E.

48.    The complexity of the underlying litigation which has been ongoing for more than 7 years is demonstrated in the docket for said case extant.

49.    The undersigned's hourly rate for cases of this nature is $750 per hour which is a fair and reasonable attorney's rate for attorneys practicing 28 years in Queens County. *See e.g., Francis v. Atl. Infiniti, Ltd.*, 34 Misc. 3d 1221(A), 950 N.Y.S.2d 608 (Sup. Ct. 2012).

50.    Accordingly, the undersigned is owed $741,150.00 in *quantum meruit*.

51.    In addition, the undersigned is owed out of pocket expenses in the amount of $4,032.52 for unreimbursed litigation expenses including travel related expenses, $400 for the filing fee and $1,250.00 for the retainer to file local counsel in Chicago.

52.    This matter is not under the purview of Part 137 of the Rules of the Chief administrator of the Courts as the amount in controversy exceeds $50,000.00.

## First Cause of Action
### (Quantum Meruit)

53.    Plaintiff is entitled to recover fees in *quantum meruit* totaling $741,150.00.

54.    Plaintiff is additionally entitled to payment of unreimbursed litigation expenses totaling $4,032.52.

55.    In light of the foregoing, Plaintiff has suffered damages in the amount of $741,150.00.

**Second Cause of Action**
**(Charging Lien Pursuant to N.Y. Judiciary Law §475)**

56.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "55" as though more fully set forth herein at length.

57.    *N.Y. Judiciary Law* § 475 (McKinney) states:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, or the initiation of any means of alternative dispute resolution including, but not limited to, mediation or arbitration, or the provision of services in a settlement negotiation at any stage of the dispute, the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien. *N.Y. Judiciary Law* § 475 (McKinney)

58.    As the only issue remaining to be decided in the underlying litigation is the quantum of damages, at the time when the matter is settled, Plaintiff is entitled to his reasonable attorney's fees by applying a reasonable contingency fee of 33.33% of any settlement or judgment ultimately received by Defendants.

59.    In the alternative, Plaintiff is entitled to receive *quantum meruit* by applying a Lodestar method (988.2 hours x $750 per hour) totaling $741,150.00, plus unreimbursed out of pocket expenses totaling $4,032.52.

60.    Plaintiff has a valid charging lien against any settlement received by Defendants.

61.    In light of the foregoing, Plaintiff has suffered damages in the amount of $745,182.52.

WHEREFORE, Plaintiff requests:

(a)    That process in due form of law may issue against Defendants citing them to appear and answer all and singular the matters aforesaid;

(b)    That judgment may be entered in favor of Plaintiff and against Defendants on the First Cause of Action for the amount of $745,182.52;

(c)    That judgment may be entered in favor of Plaintiff and against Defendants on the Second Cause of Action for the amount of $745,182.52, and

(d)    That this Court will grant to Plaintiff such other and further relief as may be just and proper, including an award of prejudgment interest and costs.

Dated:  Little Neck, New York
        August 1, 2025

Yours, etc.,

CARUSO GLYNN, LLC

By:  *Lawrence C. Glynn*

Lawrence C. Glynn (LCG-6431)
242-03 Northern Blvd., Suite 201
Little Neck, New York 11362
(718) 570-3338
File No.:   88.080125.01

## <u>VERIFICATION</u>

LAWRENCE C. GLYNN, under the penalties of perjury, hereby affirms:

That he has read the foregoing Verified Complaint and knows the contents thereof and that the same is true to his own knowledge, except as to the matters therein stated to be alleged upon information and belief and as to those matters, he believes them to be true.

Deponent further says that the sources of his information and the grounds for his belief as to all matters therein stated to be alleged on information and belief, is derived from documents, records, correspondence and memoranda of Plaintiff concerning the maters set forth in the Verified Complaint in the possession of deponent.

Dated: Little Neck, New York
      August 1, 2025

                                 *Lawrence C. Glynn*
                                 Lawrence C. Glynn