MAZZOLA LINDSTROM LLP

Hanoch Sheps
hanoch@mazzolalindstrom.com
(646) 216-8126

October 31, 2025

***Via ECF***

Honorable Nina R. Morrison, USDJ-EDNY
Morrison_Chambers@nyed.uscourts.gov
United States District Court, EDNY
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:** ***Caruso Glynn, LLC v. Liberty Corporate Capital Ltd. et al. (1:25-cv-04312)***

Dear Judge Morrison:

This letter is respectfully submitted on behalf of Lloyd's Defendants, AON, and Riviana in reply to Plaintiff's submission dated October 30, 2025.

**The Concessions of Jurisdictional Gamesmanship and Procedural Lapses**

Plaintiff's response is notable for two reasons: his explicit concessions and admission of the very jurisdictional gamesmanship alleged by defendants, and its immediate failure to follow basic procedural mandates of this Court. Yesterday's order by Magistrate Judge Merkl reminding plaintiff that the response was already *past due* under the Individual Practice Rules, underscores a lack of diligence that has regrettably characterized the entirety of plaintiff's engagement. Plaintiff's failure to abide by a simple five-day deadline, without any deference to Your Honor or attempt to confer with us regarding the clear oversight, is a startling indication of the same lack of care that created the fundamental jurisdictional defect at issue in this case.

With respect to the substance, plaintiff concedes he "deliberately excluded" necessary parties (Canopius Syndicate 4444 and Argo Syndicate 1200) because "including these entities may deprive this Court of subject matter jurisdiction" (Glynn Letter, p. 1). This is not a defense; it is an admission that the case was constructed purely to manufacture diversity jurisdiction, in contravention of the foundational rule requiring all indispensable parties to be joined under FRCP 19. Plaintiff attempts to justify this self-serving deliberate choice by claiming it was done to avoid jurisdictional defects, yet the duty of a plaintiff's counsel is to bring the action in the proper forum with the proper parties, not to strategically omit indispensable parties to manipulate a federal venue. This issue was raised to plaintiff repeatedly over a lengthy period, demonstrating plaintiff's longstanding awareness of the potential defect.

**Subject-Matter Jurisdiction is Non-Waivable and Timeliness is Irrelevant**

Plaintiff attempts to mitigate the gravity of this jurisdictional defect by referencing the length of time he worked on the underlying subrogation action, stating the subject matter jurisdiction issue arose for the first time "some eight years after plaintiff first began handling this subrogation action..." (Glynn Letter, p. 2). This line of argument reveals a profound misunderstanding of, or deliberate attempt to distract from, the non-waivable nature of subject-matter jurisdiction, as the length of time a case has been active is legally irrelevant to subject-matter jurisdiction. Unlike personal jurisdiction, subject-matter jurisdiction is a fundamental requirement of the court's authority that cannot be waived by the parties'

conduct, their agreement, or their participation in a lawsuit for any period of time. As this Court is aware, a case can be dismissed for lack of subject-matter jurisdiction years into litigation because it is a fundamental issue that cannot be waived and can be raised at any time by the parties or the court itself.

Here, the primary consequence of a late-stage dismissal for lack of subject-matter jurisdiction is that all proceedings are rendered void for lack of judicial authority, even if the holdings and findings are later considered persuasive to a state court. For the Lloyd's Defendants, who engaged plaintiff for an underlying complex cargo subrogation matter that lasted over seven years, the jurisdictional mismanagement now risks setting their entire claim for legal fees back years, and has already caused them to incur substantial, unnecessary legal fees in this new action. Plaintiff, as a lawyer, should have been aware of these basic jurisdictional rules and the irreversible consequences of such a failure from the very outset. The fact that he let the underlying matter go on for years while deliberately omitting necessary parties only compounds his error and is no basis to oppose dismissal now.

Finally, Plaintiff dismisses the Rule 19 argument as "boilerplate," stating defendants "neither set forth the 'contractual interests' that they claim will be impaired nor the nature of the 'substantial risk of multiple or inconsistent obligations.'" (Glynn Letter, p. 2). This dismissal is baffling, given the undisputed facts that the Complaint seeks recovery for fees arising out of subscription insurance policies, which means that liability is likely several, not joint, with each syndicate responsible for only its defined percentage of the risk. Because plaintiff is suing some but not all of the subscribing syndicates, there is a clear risk of inconsistent obligations. If this Court imposes joint liability (as plaintiff suggests it might) or attempts to adjudicate the total fee amount, the absent syndicates may not be bound by the judgment. A separate state court action against the absent syndicates could result in an entirely different finding as to the reasonableness of the total fee or the liability structure, thereby exposing the named defendants to double payment or inconsistent indemnification claims—the precise harm Rule 19 is designed to prevent.

Plaintiff's own letter confirms the deliberate "jurisdictional gamesmanship" alleged by Defendants. We respectfully maintain that dismissal is warranted because indispensable parties cannot be joined without destroying diversity jurisdiction.

Respectfully submitted,

Hanoch Sheps