UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
Caruso Glynn, LLC,

Plaintiff, Docket No. 25-cv-04312 (NRM) (TAM)

-against-

Liberty Corporate Capital Ltd., Talbot 2002 Underwriting Capital Ltd., Axis Corporate Capital UK II Ltd. f/k/a Novae Corporate Underwriting Ltd., Aprilgrange Limited, F&G UK Underwriters Limited, Axis Corporate Capital UK Ltd., Catlin Syndicate Ltd., Brit UW Ltd., Markel Capital Limited, QBE Corporate Ltd., Aon and Riviana Foods Inc.,

Defendants.
----------------------------------------------------------x

**Memorandum of Law in Reply to Plaintiff Caruso Glynn, LLC's Opposition to Defendants' Motion to Dismiss the Complaint**

**MAZZOLA LINDSTROM LLP**
Jean-Claude Mazzola
Hanoch Sheps
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
646.216.8126
jeanclaude@mazzolalindstrom.com
hanoch@mazzolalindstrom.com
*Attorneys for defendants*

January 2, 2026

## Preliminary Statement

Defendants respectfully submit this memorandum of law in reply to plaintiff Caruso Glynn, LLC's opposition to the motion to dismiss the complaint. For the reasons set forth in the original moving papers, and for the further reasons set forth herein, defendants respectfully submit that the motion to dismiss must be granted. We note that plaintiff denies knowledge of the July 17, 2017 email referred to in the moving paper, referring to it as a "mystery" email, and stating that he[1] was terminated before the email was sent. In point of fact, he was cc'd on the email. It was only referenced in the motion to dismiss to show that he was well aware that the Canopius and Argo syndicates were previously deemed necessary parties by the federal court in the underlying matter, and that his not naming them in the case at bar was thus a deliberate attempt to circumvent the requirement of complete diversity in this follow-on case. The email is being filed under seal.

## Argument in Reply

**Point I: The Case Law Relied Upon by Plaintiff is Inapt, as Rule 19 Must be Applied on a Case-by-Case Basis.**

As noted in the original moving papers, there is no "prescribed formula" for the Rule 19 analysis, and "abundant case law supports the proposition that [Rule 19] is to be applied on a case-by-case basis." *Soberay Mach. & Equip. v. MRF*, 181 F.3d 759, 765 (6th Cir. 1999); *Glancy v. Taubman Ctrs.*, 373 F.3d 656, 669 (6th Cir. 2004); *Soberay Mach. & Equip. v. MRF*, 181 F.3d 759, 765 (6th Cir. 1999). The Second Circuit is in accord. See *CP Solutions v. GE*, 553 F.3d 156 (2d Cir. 2009); *Jaser v. New York Property Ins. Underwriting Asso*c., 815 F.2d 240, 242 ("the federal rules instruct courts to determine whether an action may in 'equity and good conscience' proceed without the nonjoined parties. Fed. R. Civ. P. 19(b). As an alternative to dismissal, a

[1] As in the original moving papers, Caruso Glynn, LLC – being the business entity of Mr. Glynn – is referred to colloquially as "he" or "him.

court should take a flexible approach when deciding what parties need to be present for a just resolution of the suit.") Here, plaintiff has conceded that he omitted them because their inclusion would have destroyed diversity jurisdiction.

Rather than addressing the case law cited by defendants in support of the motion to dismiss, plaintiff pretends that they're not even there, stating, "plaintiff is … seeking only monetary damages (attorney's fees) and the Lloyd's Defendants still have not explained why the relief sought could not be obtained without the presence of Canopius and Argo." (Mem. in Opp., p. 6). Plaintiff makes no effort to distinguish the *Errico*[2] and *Smith*[3] cases, much less address defendants' argument that plaintiff is looking to obtain complete relief from the named defendants – *viz*., $745,182.52 in legal fees – even though a portion of such fees would be owed (assuming plaintiff can prove his case) by the nondiverse Canopius and Argo syndicates. Indeed, plaintiff concedes defendants' point, stating "[t]he manner in which the Lloyd's Defendants apportion risk, costs, etc., under their subscription policies is not relevant to their joint obligation to pay for legal services performed on behalf of all syndicates – syndicates who benefitted from those legal services equally." (Mem. in Opp., p. 6).

That is, plaintiff is positing that he could sue any one of the named defendants for the full amount of the claim, $745,182.52, even if that named defendant is only responsible for, *e.g.*, 10% of the claim, and then it would be the obligation of that defendant to bring a separate action later, if held liable, to recover from the other defendants. Plaintiff has checkmated himself with his own argument, as it would clearly be unfair to saddle any one defendant with the burden of defending the entire case, and then having to relitigate in a subsequent case whether it adequately

---

[2] *Errico v. Stryker*, 2010 US Dist LEXIS 133567 (S.D.N.Y. 2010).
[3] *Smith v. Kessner*, 183 F.R.D. 373 (S.D.N.Y. 1998).

defended the case. The problem is compounded if a named defendant opts to settle with the plaintiff, for then the defendant would have to prove both that the plaintiff was in fact owed money and that the amount paid was reasonable.

As the court is aware, under New York law, malpractice and breach of fiduciary duty would be a complete defense to plaintiff's claim for legal fees. ("[A]n attorney who engages in misconduct by violating the Disciplinary Rules is not entitled to legal fees for any services rendered (*see Brill v. Friends World Coll.*, 133 A.D.2d 729)," *Shelton v. Shelton*, 151 A.D.2d 659, 542 N.Y.S.2d 719 (2d Dept. 1989). Thus, in a subsequent action to collect from a nondiverse/unnamed defendants – the Canopius and Argo syndicates – the named defendant (or defendants) would have to re-litigate the issue whether or not plaintiff violated the Disciplinary Rules. When the action is dismissed, as it should be, and re-filed in state court, all of the syndicates would be able to litigate in the same forum whether he committed malpractice or otherwise breached his fiduciary duties to all of the defendants.

The cases relied upon by plaintiff thus fail to support his position. Plaintiff cites dictum from the *Shoftmakher* [4] case for the proposition that defendants must show that the nondiverse defendant has sought to intervene before dismissing on Rule 19 grounds. The *Shoftmakher* court first addressed the standards for dismissal under Rule 19. The first prong of the analysis is whether it is feasible to join the nondiverse party. That standard is clearly met, as the Canopius and Argo syndicates' are subject to in personam jurisdiction, as they engage in business in New York, but their potential exposure is less than $75,000 each, which destroys diversity jurisdiction. The second prong asks, is the party indispensable, "meaning the prospect of adjudication in the party's absence compels, in equity and good conscience, dismissal pursuant

[4] *Shoftmakher v. David*, 2015 U.S. Dist. LEXIS 117209; 2015 WL 5148832 (SDNY 2015).

to Rule 19(b)." (*Id.* at *19). Then, addressing subparagraph (a), the court states: (*Id.*, emphasis added; cleaned up)

> Rule 19(a) provides that the absent party shall be joined in the suit, if feasible, when: (1) in the person's absence, complete relief cannot be accorded among existing parties, **or** (2) the person "claims an interest relating to the subject of the action and is so situated that" the disposition of the action in the person's absence may (i) "as a practical matter impair or impede the person's ability to protect that interest," or (ii) "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" by reason of the claimed interest. Fed. R. Civ. P. 19(a)(1).

Plaintiff disregards the "or," to make it appear as though the case holds that unless Canopius and Argo first try to intervene but are denied intervention they cannot be deemed indispensable parties. It does not so hold. In point of fact, while the judge also noted that the unnamed parties hadn't sought to intervene, the judge addressed each alternative and found that the unnamed parties quite simply were not indispensable parties. Here, in contrast, the Canopius and Argo syndicates are indispensable, as plaintiff is seeking full recovery from the named defendants though the unnamed parties would also be obligated – unless such obligation is excused because of plaintiff's malpractice and breaches of fiduciary duties – to pay legal fees. In equity and good conscience, the Lloyd's defendants who have been named should not have to be put in the position of double litigation, and inconsistent determinations, whereby in the case at bar it might be found that plaintiff did not breach the Disciplinary Rules, requiring payment, and in a subsequent action against the nondiverse unnamed parties, it might be found that he did violate the Disciplinary Rules and thus that the nondiverse parties would not have to share in the obligation to pay attorney's fees. Applying principles of equity and good conscience, this court

should simply find that the case should be tried in a state court, where all of the parties could be joined.[5]

The *Peregrine Myanmar*[6] case is no different. While the court noted that the nonjoined party – a ministry of the government of Myanmar, which was a partner to a joint venture – had not sought to intervene, the court also found that it was not an indispensable party to the lawsuit, as it was the joint venture that was the proper party, and not the part owner, *viz*., the government ministry. The *Peregrine Myanmar* court stated: (*Id*. at 48-49; emphasis added; cleaned up)

> Rule 19(a) sets out two situations in which joinder of a party is compulsory:
>
> > (1) in the person's absence complete relief cannot be accorded among those already parties, or
> >
> > (2) [A] the person claims an interest relating to the subject of the action and
> >
> > [B] is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.
>
> The key issue in deciding whether either part of Rule 19(a) applies is the extent to which this case requires a determination of rights and interests under the MAFCO joint venture agreement, to which the Ministry is a party. Segal says that this case necessarily determines rights under the MAFCO joint venture agreement; the plaintiffs say that this case is merely about an employment contract and has nothing to do with the MAFCO joint venture agreement.
>
> Neither position is entirely convincing. The plaintiffs' claim for "tortious interference with prospective economic advantage" alleges that Segal is interfering with the plaintiffs' interest (through MMAFFCL) in MAFCO. Deciding whether Segal interfered with that interest entails a decision about whether the plaintiffs actually have an interest in MAFCO, a point that Segal disputes on two alternate grounds: (i) the acquisition agreement in which MMAI transferred MMAFFCL's shares to PML was invalid, and (ii) that transfer violated the joint venture agreement, rendering MMAFFCL's interest in MAFCO void.

---

[5] As for plaintiff's suggestion that the Canopius and Argo syndicates must first seek to intervene as party defendants, there is a circularity of illogic to the idea that nondiverse non-parties should intervene into a case that must be dismissed for lack of diversity jurisdiction if they become defendants in the action.

[6] *Peregrine Myanmar v. David*, 89 F.3d 41 (2d Cir. 1996).

> As a result, Segal's arguments fail under both parts of Rule 19(a). "Complete relief" can be accorded even without the Ministry, because nothing in the district court's statements or final judgment requires the Ministry to do anything or change any of its positions.
>
> ***
>
> In addition, nothing in the court's analysis or judgment "impairs" the Ministry's "ability to protect its interest" in MAFCO, as discussed above. Nor does the Ministry's absence present a "substantial risk" **that any of the parties** will "incur double, multiple, **or otherwise inconsistent obligations.**"

Here, defendants have demonstrated that the absence of the nondiverse parties does pose a risk of inconsistent determinations, as in the second action the nondiverse parties could defend on the ground that Caruso Glynn committed malpractice or otherwise breached its fiduciary duties, requiring a total do-over of the trial (if the first case is tried, rather than being dismissed or settled), and if the case is settled, then the Lloyd's defendants would have to prove that Caruso Glynn would have prevailed on its claim for attorney's fees – that is, it would have to take the opposite position that in action #2 from what it took in action #1. In the first action, the defendants would contend that Caruso Glynn breached the Disciplinary Rules; in the second, it would have to contend that he did not.

*S &S Mach. Corp.*[7] is yet another case that demonstrates that Rule 19 is not applied formulaically, but on a case-by-case basis. The court recognized that "Rule 19(a)(2)(ii) … protects against multiple or inconsistent obligations arising from incomplete adjudication," but found such risk to be absent. Here, as demonstrated above, the risk is quite real.

**Point II: There is no Cognizable Cause of Action Alleged Against Riviana and Aon.**

Caruso Glynn improperly assumes that Aon hired Barbuss Global as third-party administrator, and gave Barbuss authority to hire Caruso Glynn. Even if both were true, this does

[7] S & S Mach. Corp. v. GM, 1994 U.S. Dist. LEXIS 13677 *16; 1994 WL 529867 (SDNY 1994)

not give rise to a cause of action against them. Caruso Glynn is seeking recovery of legal fees from the Lloyd's defendants based upon theories of breach of contract and quantum meruit, but does not allege how Riviana or Aon would be responsible for such fees. Here, Aon had no role or authority in the adjustment of the claim, nor in the appointment and retention of non-party Barbuss Global, so it is quite inconceivable a claim could actually be stated against it, and Riviana was a mere nominal subrogor plaintiff. Accordingly, if the case is not dismissed outright for lack of diversity jurisdiction, plaintiff should be required to amend his complaint in order to state a viable cause of action against these defendants.

**Conclusion**

WHEREFORE, it is respectfully requested that plaintiff's Complaint be dismissed due for lack of subject matter jurisdiction. In the event the motion is denied, defendants respectfully request that the Court grant them thirty days to interpose their answer.

Dated: New York, New York
January 2, 2026

**MAZZOLA LINDSTROM LLP**

By: ____________________________

Jean-Claude Mazzola
Hanoch Sheps
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
646.216.8126
jeanclaude@mazzolalindstrom.com
hanoch@mazzolalindstrom.com
*Attorneys for defendants*

**Word Count Certification**

This memorandum contains 2,263, exclusive of the caption and signature block.

Dated: New York, New York
January 2, 2026

**MAZZOLA LINDSTROM LLP**

By: ______________________
Jean-Claude Mazzola
Hanoch Sheps
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
646.216.8126
jeanclaude@mazzolalindstrom.com
hanoch@mazzolalindstrom.com
*Attorneys for defendants*