UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CARUSO GLYNN, LLC,

Plaintiff,

v.

LIBERTY CORPORATE CAPITAL LTD., *et al.*,

Defendants.

MEMORANDUM & ORDER
24-CV-03471 (MMH) (NRM)

NINA R. MORRISON, United States District Judge:

Plaintiff Caruso Glynn, LLC filed this action for attorney's fees in quantum meruit against Defendants Riviana Foods, Inc. ("Riviana"), Aon, and ten Lloyd's of London underwriters (the "Lloyd's Defendants") based on Plaintiff's representation of these Defendants in a subrogation action in the Northern District of Illinois. Defendants moved to dismiss for failure to state a claim, and this Court referred the motion to Magistrate Judge Taryn A. Merkl for a report and recommendation ("R&R"). On July 24, 2026, Judge Merkl filed an R&R recommending that Defendants' motion to dismiss be granted for lack of subject-matter jurisdiction. R. & R., ECF No. 55.

For the reasons that follow, the Court respectfully declines to follow Judge Merkl's recommendation, and denies Defendants' motion to dismiss.

## DISCUSSION

As the parties are familiar with the facts, the Court only briefly summarizes the relevant background as alleged in the operative Complaint. On March 20, 2018,

Defendants, through a third-party agent Barbuss Global ("Barbuss"), hired Plaintiff to handle a subrogation recovery for losses related to a fire at the Monee Warehouse, in which Defendant Riviana suffered damages of $2,261,459.85. Compl. ¶¶ 26, 28, ECF No. 1. Plaintiff was authorized to act on a contingency fee basis of 8.5% of any gross recovery, with no retainer agreement. *Id.* ¶¶ 29–31. Plaintiff subsequently filed suit on behalf of the named Defendants on July 26, 2018 in *Riviana Foods, Inc. v. Jacobson Warehouse*, No. 18-CV-6692 (KMK) (S.D.N.Y.), and the case was later transferred to the Northern District of Illinois, No. 18-CV-6550 (MMP) (N.D. Ill.). In July 2025, prior to the resolution of the underlying case, Defendants discharged Plaintiff and retained new counsel to pursue the matter. Compl. ¶ 39. Plaintiff thus filed suit in this Court to recover in quantum meruit the reasonable value of its services up to that point.[1]

Defendants have moved to dismiss on three grounds. First, they argue that because Plaintiff cannot join two indispensable parties under Rule 19 without destroying diversity jurisdiction, the case cannot proceed "in equity and good conscience." Def.'s Mem. of L. in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 3, ECF No. 35; Fed. R. Civ. P. 19(b). Second, they argue that Plaintiff has failed to establish the requisite $75,000.00 amount in controversy as to the existing parties. Def.'s Mem. at 10. Third, Defendants separately argue that the action should be dismissed as to Defendants Aon and Riviana for failure to state a claim. *Id.* at 13. The R&R

---

[1] For the remaining details in the case's factual and procedural history, the Court incorporates by reference the background as recounted in Judge Merkl's R&R. *See* R. & R. at 2–7.

recommends granting the motion to dismiss on the basis of the second claim and thus declined to address the merits of the other two arguments.

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "When a party submits timely and specific objections to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected." *Mancuso v. Kijakazi*, No. 22-CV-5633 (KMK), 2023 WL 6311289, at *1 (S.D.N.Y. Sep. 28, 2023). Plaintiff timely filed its objection to the R&R on July 31, 2026, contesting the R&R's findings and analysis with respect to the proper amount in controversy as to the Lloyd's Defendants. Obj. to R. & R., ECF No. 56. The Court thus begins by reviewing Defendants' jurisdictional challenge *de novo*.

**A. Subject-Matter Jurisdiction**

Plaintiff has alleged that it is owed $741,150.00 in quantum meruit for the 7+ years of legal work performed on behalf of Defendants. Compl. ¶ 50. However, Defendants contend that each Defendant would only be liable for a pro-rata share of that fee based on its individual liability to the insured. Def.'s Mem. at 10. As such, Defendants argue that Plaintiff cannot use the total sum demanded in quantum meruit to establish the required $75,000.00 amount in controversy as to all Defendants. *Id*. at 11–13.

Though there are some open questions as to how any pro-rata share would be determined, the key issue before the Court is the nature of Defendants' liability, as Defendants' argument relies on finding that they are not jointly liable to Plaintiff for

the full sum of $741,150.00. For the reasons that follow, although the Court appreciates that the unique structure of Lloyd's insurers presents an unusual fact pattern for determining liability as to the Defendant parties, it ultimately finds that Defendants would be jointly and severally liable for the total sum of $741,150.00 in quantum meruit should Plaintiff succeed in its claim. As such, Plaintiff has satisfied the amount-in-controversy requirement for subject-matter jurisdiction.

The Second Circuit has held that there is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (quoting *Wolde-Meskel v. Vocational Instr. Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).

Nevertheless, "Supreme Court caselaw makes clear that district courts have broad discretion when determining how to consider challenges to subject matter jurisdiction." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022). The only notable limitation is that "[w]here a party offers extrinsic evidence that contradicts the material allegations of the complaint" with regards to the existence of jurisdiction, "it would be error for the district court to disregard that extrinsic evidence." *Id.* at 442. Absent such evidence, where, as here, "the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, the

court [still] must take all facts alleged in the complaint as true." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (citation modified).

The R&R found that the Lloyd's Defendants are severally liable to Plaintiff based primarily on the particular structure of the Lloyd's market. R. & R. at 14. As courts in our circuit have found,

> Lloyd's is not an insurance company, but instead functions as a marketplace where investors buy and sell insurance risks. These investors—also known as "Names"—invest funds and pledge their assets as security for insurance risks offered in the Lloyd's market. . . . Each Name is severally, but not jointly, liable to the insured for his fraction of the risk on a given policy.

*K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, No. 92-CV-5249 (AJP), 1998 WL 274346, at *3 (S.D.N.Y. May 26, 1998) (quoting *Long Island Lighting Co. v. Aetna Cas. & Sur. Co.*, No. 96-CV-9664 (MBM), 1997 WL 567342, at *1 (S.D.N.Y. Sep. 11, 1997)). In other words, the Lloyd's Defendants here are each severally liable to Defendant Riviana, the insured, in accordance with its fraction of risk under the policy purchased by Riviana. Based on this unique structure, the R&R concluded that although Plaintiff's legal services were engaged "on behalf of all of the Lloyd's Entities, . . . each name is only responsible 'for his fraction of the risk' under the policy that triggered their involvement in the subrogation action." R. & R. at 14 (quoting *K. Bell & Assocs.,* 1998 WL 274346, at *3).

The Second Circuit and a court in the Southern District of New York have held that because "the liability for [] individual [Lloyd's] underwriters for their proportion of the risk is strictly several," "a plaintiff cannot aggregate its claims against [them] in order to satisfy the jurisdictional amount in controversy requirement." *Chase*

*Manhattan Bank, N.A. v. Aldridge*, 906 F. Supp. 870, 874 (S.D.N.Y. 1995); *accord E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 933 (2d Cir. 1998). Both the R&R and Defendants rely on these authorities to suggest that here, too, Plaintiff cannot rely on its total sum due in quantum meruit in satisfying the amount in controversy because Defendants are purportedly only severally liable for any recovery.

However, the structure of the Lloyd's market speaks only to the Lloyd's Defendants' liability as to the insured, the entity who purchased a policy on the Lloyd's market. The three cases on which Defendants rely — *K. Bell*, *Aldridge*, and *Squibb* — all involved plaintiffs who purchased policies from Lloyd's of London, and subsequently sued for indemnification when the relevant Lloyd's underwriters refused to pay. *See K. Bell*, 1998 WL 274346, at *1–2; *Chase Manhattan Bank, N.A. v. Aldridge*, 906 F. Supp. 866, 867 (S.D.N.Y. 1995); *Squibb*, 160 F.3d at 928. Naturally, then, the Lloyd's insurers' several liability to the insured plaintiffs — as codified by the policies in each of those cases[2] — prevented plaintiffs from aggregating their claims against each of the underwriter defendants to satisfy the amount in controversy.

But here, Plaintiff is not the insured, and the claim is not for indemnification

---

[2] *See K. Bell & Assocs.*, 1998 WL 274346, at *3 ("As in all Lloyd's policies, the Names are severally liable and not jointly liable under the policy."); *Aldridge*, 906 F. Supp. at 872 ("As the Policy in this case provides, the individual underwriters are bound 'each for his own part and not one for another . . . and in respect to his due proportion only, to insure against any loss . . . .'"); *Squibb*, 160 F.3d at 929 ("In other words, the liability on each Name on any given policy, while unlimited, is several and not joint.").

of losses under any of Lloyd's insurance policies. Rather, the instant action is based on legal services that Plaintiff undertook on behalf of all Defendants, including the Lloyd's Defendants, to litigate claims against an Illinois warehouse whose purported negligence led to significant losses related to Defendant Riviana's cargo. While that legal work may have arisen as a *result* of Riviana's insurance policy with the Lloyd's Defendants', there is no allegation — nor could there be — that that policy governs any agreement between the Lloyd's Defendants and Plaintiff. Instead, Defendants' liability to Plaintiff is based on their own, separate agreement, in which Plaintiff agreed to pursue a subrogation action against the Monee Warehouse "on behalf of all of the named defendants" in exchange for a contingency fee. Compl. ¶ 26; *see id.* ¶ 30; *id.* Ex. A.

*Carey v. Mui-Hin Lau*, 140 F. Supp. 2d 291 (S.D.N.Y. 2001) (opinion of Motley, J.), confirms this view.[3] In *Carey*, the plaintiff-attorney brought suit against six former clients seeking, *inter alia*, recovery under quantum meruit. The six *Carey* defendants were family members who hired plaintiff to represent them in a separate suit brought against them by a securities firm. Notably, in the underlying action, the securities firm "sought separate individual amounts of damages against each defendant," *Carey*, 140 F. Supp. 2d at 293, and following trial, the Court awarded

[3] The R&R acknowledged that in *Carey*, the Honorable Constance Baker Motley awarded fees in quantum meruit and imposed joint and several liability against the defendants in a somewhat different context. Judge Merkl noted that in light of *Carey*, "a survey of the caselaw does not squarely foreclose the possibility that a quantum meruit award could be imposed jointly, rather than severally." R. & R. at 13.

damages separately as to each liable defendant, *see* Entry of Judgment, *Lau v. Richardson*, No. 88-CV-02284 (CBM) (S.D.N.Y.), ECF No. 5. Nevertheless, the *Carey* court found that defendants were jointly liable to plaintiff in quantum meruit because plaintiff "sent all bills for all legal services to all defendants," and "the services [plaintiff] performed for each defendant involved the same research, discovery, and trial preparation." *Carey*, 140 F. Supp. 2d at 299.

So too here. For purposes of the underlying insurance claim, the Lloyd's Defendants were and are severally liable to the insured for any losses incurred. But with respect to the agreement between the Lloyd's Defendants and Plaintiff, Defendants are jointly liable to Plaintiff in quantum meruit because Plaintiff billed for its services to all Defendants, Compl. Ex. E at 1–2, ECF No. 1-5, and performed its legal work on behalf of all Defendants, Compl. ¶¶ 26–32. Indeed, the case for joint liability here is even stronger than in *Carey*, as Plaintiff represented Defendants as a collective, not as individuals. That is, Plaintiff did not merely perform the "same research [and] discovery" for the various Defendants; it necessarily performed exactly the same work for all Defendants. *Carey*, 140 F. Supp. 2d at 299

To be sure, as noted in the R&R, caselaw is sparse as to the governing standards in the context of recovery in quantum meruit. However, general principles of liability under New York law also militate in favor of finding joint liability as to the Defendants. Under New York tort law, "joint and several liability is appropriate where the action or in[]action of several defendants produces a single indivisible injury." *Koster v. Perales*, 903 F.2d 131, 140 (2d Cir. 1990); *accord Pizarro v. Euros*

*El Tina Rest. Lounge & Billiards Corp.*, 825 F. Supp. 3d 405, 406 (E.D.N.Y. 2026). An injury is "divisible" if "the causation of each part can be separately assigned to each tortfeasor." *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 n. 8 (1979); *see also Gov't Emps. Ins. Co. v. Erlikh*, No. 16-CV-7120 (DLI) (SJB), 2019 WL 1487576, at *8 (E.D.N.Y. Feb. 28, 2019) ("Where courts have found that an injury is divisible for the purposes of determining joint and several liability, there has been a clear allocation of fault between each [] defendant.").

Under New York contract law, "joint and several liability properly is imposed where two parties to a single contract promise the same performance to the same promisee." *NYKCool A.B. v. Pac. Fruit Inc.*, No. 10-CV-3867 (LAK) (AJP), 2011 WL 3666579, at *3 (S.D.N.Y. Aug. 9, 2011), *aff'd*, 507 F. App'x 83 (2d Cir. 2013). Indeed, there is a strong presumption of joint liability in such cases, as "New York law is clear that when multiple promisors agree to pay a stated sum to the same promisee, they will be jointly liable unless the promisors unambiguously expressed a contrary intention." *Lemus v. Manhattan Car Wash, Inc.*, No. 06-CV-15486 (MHD), 2010 WL 1372705, at *7 (S.D.N.Y. Mar. 26, 2010).

Here, the Court finds that principles of New York contract law govern. Firstly, "[u]nder New York law, a quantum meruit claim is a claim in quasi-contract." *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 394 (2d Cir. 2001). Moreover, this case presents a unique circumstance even among quantum meruit cases. While quantum meruit typically operates as "an equitable remedy designed to ensure a just result where there is no contract and none was intended," *Tower Intern., Inc. v. Caledonian*

*Airways Ltd.*, No. 93-CV-1122 (CPS), 1996 WL 68531, at *5 (E.D.N.Y. Jan. 25, 1996), here, it is undisputed that there was an agreement between Plaintiff and Defendants' third-party agent to pay Plaintiff in exchange for legal services in connection with Defendants' subrogation claim. However, this was a contingent fee agreement, and Plaintiff was discharged prior to any recovery. Compl. ¶ 39. "[I]t is settled New York law that an attorney performing under a contingent-fee agreement that is terminated without cause 'is entitled to recover in *quantum meruit* the fair and reasonable value of his services.'" *Artists Rts. Enf't Corp. v. Est. of King*, 370 F. Supp. 3d 371, 383 (S.D.N.Y. 2019) (quoting *Levy v. Laing*, 843 N.Y.S.2d 542, 544 (N.Y. App. Div. 2007)). In other words, although Plaintiff seeks a remedy in quantum meruit due to the underlying circumstances, any liability Defendants may have to Plaintiff arises, in substantial part, from a contractual agreement.

The Second Circuit's decision in *Fieger* is instructive. New York law has two different choice-of-law analyses, one for contract claims and one for tort claims. In *Fieger*, the Second Circuit was faced with determining which of these frameworks to apply to the plaintiff's claim of quantum meruit. The court decided to apply the choice-of-law analysis for contract claims, noting that "a quantum meruit claim is a claim in quasi-contract," and that plaintiff's claim "sound[ed] more in contract than in tort" because it "ar[ose] . . . from the benefit allegedly conferred upon defendant by plaintiff's business advice." *Fieger*, 251 F. 3d. at 394. Here, given that Plaintiff is seeking to recover fees for legal work performed on behalf of Defendants pursuant to a contractual agreement to perform those services, Plaintiff's quantum meruit claim

plainly "sounds more in contract than in tort."

Under prevailing contract law principles for determining joint and several liability, the Court finds that the Complaint sufficiently alleges facts establishing that Defendants would be jointly liable for any fees recovered in the action. Plaintiff was approached by Barbuss Global, a third-party "recovery agent approved by defendant Aon and Lloyd's Underwriters," "to handle the subrogation action on behalf of both Riviana and the named underwriter defendants." Compl. ¶¶ 28, 29. The Complaint clearly states that Plaintiff performed its legal work "on behalf of all named defendants," *Id.* ¶ 26, and Plaintiff is listed as the attorney of record for "Riviana Foods, Inc. and Interested Subrogated Underwriters" in the underlying litigation in the Northern District of Illinois, *Riviana Foods, Inc. v. Jacobson Warehouse, Inc.*, No. 18-CV-6550 (MMP) (N.D. Ill.). The Complaint also alleges that Rob Hawes, "on behalf of Liberty and all named defendants," communicated Defendants' intention to discharge Plaintiff, stating that "we wish to press ahead with Walker Wilcox overseen by Fields Howell to continue the litigation." Compl. ¶¶ 39, 40.

Furthermore, attached to the Complaint is an email exchange between a representative from Barbuss and a representative for Plaintiff, in which the Barbuss representative agrees to a contingency-fee agreement on behalf of "[o]ur clients (insurers)": 7.5% of gross recovery not in suit, and 8.5% in suit. Compl. Ex. A, ECF No. 1-1. Finally, Plaintiff has filed a copy of a sealed invoice, addressed to the Barbuss representative, for legal fees and expenses incurred in relation to its

representation. Compl. Ex. E at 1–2, ECF No. 1-5.

Even in considering jurisdictional issues, and absent evidence rebutting Plaintiff's well-pleaded jurisdictional allegations, the Court "must take all facts alleged in the complaint as true." *Robinson*, 269 F.3d at 140 (quoting *Sweet v. Sheahan*, 233 F.3d 80, 83 (2d Cir. 2000)). Based on the above, it is evident that Defendants, through their third-party agent, "agree[d] to pay a stated sum to the same promisee" — a contingency fee of 7.5% or 8.5% of gross recovery. *Lemus*, 2010 WL 1372705, at *7; *see Com. Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003) ("If the agent had authority to enter into the contract, the principal will be bound."). Thus, had Plaintiff continued to represent Defendants until obtaining a favorable judgment or settlement, there is no question that under New York contract law, Defendants would have been jointly liable to Plaintiff for a percentage of that gross recovery. *See Lemus*, 2010 WL 1372705, at *7; *NYKCool*, 2011 WL 3666579, at *3. Plaintiff was discharged prior to any recovery in the underlying litigation, making impossible the award calculation under the original agreement. But in light of the work actually performed under the agreement, Defendants are now jointly liable in quantum meruit for the value of those agreed-upon services.

Defendants fail to present any evidence suggesting that notwithstanding the aforementioned contingency agreement, they were only severally liable to Plaintiff. They do not dispute that Barbuss Global, in contracting with Plaintiff, acted on their behalf as a third-party agent. Defendants also do not provide any extrinsic evidence,

in either their initial briefing or objection to the R&R, showing that they did not jointly enter an agreement to compensate Plaintiff in the event they prevailed in litigation, let alone that they "unambiguously expressed a contrary intention." *Lemus*, 2010 WL 1372705, at *7; *see also Wujin Nanxiashu Secant Factory v. Ti-Well Int'l Corp.*, 802 N.Y.S.2d 411, 414 (N.Y. App. Div. 2005) (holding that "[s]ettled rules governing the interpretation of contracts provide that . . . words of severance are necessary to overcome th[e] primary presumption" of joint liability). At the very least, then, Defendants have failed to establish that "it appears to a legal certainty that the amount in controversy does not exceed $75,000." *Legal Agency, Inc. v. Scoffield*, 559 F. Supp. 3d 195, 203 (S.D.N.Y. 2021) (citing *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994)).

Having found that Defendants would be jointly liable for any damages in quantum meruit, Plaintiff has satisfied the amount-in-controversy requirement for diversity jurisdiction. For these reasons, upon *de novo* review, the Court disagrees with the R&R's contrary conclusion as to the existence of subject-matter jurisdiction and declines to adopt that portion of the R&R.

**B. Indispensable Parties Under Rule 19**

As the R&R recommended dismissing the Complaint on the above jurisdictional grounds, it did not address the merits of Defendants' remaining two claims. The Court now turns to those claims.

Defendants first argue that dismissal is required under Rule 19 because Plaintiff failed to join two other Lloyd's insurers, "Canopius (Syndicate 4444)" and

"Argo (Syndicate 1200)," who were also underwriters on Riviana's insurance policy with Lloyd's. Mot. for Pre-Mot. Conference ("PMC Mot.") at 1, ECF No. 26. Rule 19 governs the joinder of required parties. Rule 19(a) defines a "required party," and Rule 19(b) sets out the standards for when a case and can and cannot proceed if joinder of a required party is not feasible. *See* Fed. R. Civ. P. 19. The parties appear to be in agreement that citizenship could not be confirmed for Canopius and Argo, and thus, joinder of those syndicates would destroy diversity jurisdiction. Defendants claim that because these entities are indispensable parties and joinder is not feasible, the Court should determine that the action cannot proceed "in equity and good conscience." Def.'s Mem. at 3; Fed. R. Civ. P. 19(b).

The Court observes that Defendants' arguments on this point are difficult to follow, conflate the different standards under Rule 19(a) and Rule 19(b), and rely primarily on out-of-circuit authorities. In any case, the claim is without merit.

For starters, Rule 19(a) expressly defines a "required party" as one "whose joinder will not deprive the court of subject-matter jurisdiction." Fed. R. Civ. P. 19(a)(1). "A necessary party must be joined as a party to the action *unless* joinder would deprive the court of subject matter jurisdiction." *Wash. Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 134 (2d Cir. 2020) (emphasis added). "Therefore, if adding [these syndicates] as [] part[ies] would destroy diversity, then [they are] not a 'required party' within the meaning of the Federal Rules." *Shin v. Kim*, No. 24-CV-04293 (MMG), 2026 WL 765617, at *5 (S.D.N.Y. Mar. 18, 2026). That alone is sufficient to deny Defendants' Rule 19 claim.

Furthermore, having already established that Defendants — and any other underwriters represented by Plaintiffs in the subrogation action — are jointly liable to Plaintiff in quantum meruit, these additional syndicates would not qualify as required parties even if their joinder did not defeat jurisdiction. Rule 19(a) defines, in relevant part, a required party as one whose absence would preclude "complete relief among existing parties," or one who "claims an interest relating to the subject of the action and is so situated that disposing of the action" would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. Civ. P. R. 19(a)(1). Neither prong is met here.

First, Defendants never address the first prong of why complete relief would be precluded absent joinder. "[T]he term complete relief refers only to relief as between the persons [who are] *already* parties, and not as between a party and the absent person whose joinder is sought." *Clifford v. Janklow*, No. 22-CV-1259 (MKV), 2023 WL 2711353, at *7 (S.D.N.Y. Mar. 30, 2023) (alterations and emphasis in original) (quoting *Arkwright-Bos. Mfrs. Mut. Ins. Co. v. City of N.Y.*, 762 F.2d 205, 209 (2d Cir. 1985)). Here, "Plaintiff seeks only monetary damages, and Defendants do not explain why the relief sought could not be obtained without the absent parties' presence." *Shtofmakher v. David*, No. 14-CV-6934 (AT), 2015 WL 5148832, at *7 (S.D.N.Y. Aug. 17, 2015).

Instead, Defendants appear to address only the second prong, arguing that the failure to join the non-parties would prejudice these syndicates' contractual rights, and expose Defendants to "inconsistent obligations" under Rule 19(a). Def.'s Mem. at

1. Once again, Defendants' claim is dead on arrival, as this prong applies only to non-parties who "claim[] an interest relating to the subject of the action." Fed. Civ. P. R. 19(a)(1)(B). Defendants never allege, let alone present evidence suggesting, that Canopius or Argo ever claimed an interest in the action. Because "[i]t is the absent party that must 'claim an interest,'" Defendants cannot show that these syndicates are required parties under this prong of Rule 19(a). *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996).

Moreover, Defendants' contention that they would be subject to "double" or "inconsistent" obligations were this action allowed to proceed relies on a clear misreading of relevant caselaw. For example, Defendants cite *Errico v. Stryker*, No. 10-CV-3960 (JLC), 2010 WL 5174361 (S.D.N.Y. Dec. 14, 2010), to argue that "a party is indispensable when its absence could subject the *obligors* 'to double liability on the same claim.'" Def.'s Mem. at 8 (emphasis added) (quoting *Errico*, 2010 WL 5174361, at *9). But Plaintiff here is the *obligee* — Defendants are the obligors. That is a critical distinction, as "one of several joint obligors is not typically an indispensable party to an action against the others." *Universal Reinsurance Co., Ltd. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002). Indeed, the paragraph from *Errico* that Defendants quote in their motion is a string-cite of courts drawing this very distinction, emphasizing that it is co-*obligees* who are indispensable parties to an action, not co-obligors. *See* Def.'s Mem. at 8–9; *see, e.g.*, *William A. Gross Const. Assocs. Inc. v. Am. Mfrs. Mut. Ins. Co.*, No. 07-CV-10639 (LAK) (AJP), 2009 WL 427280, at *10 (S.D.N.Y. Feb. 23, 2009) ("It is well-settled that *co-obligors* to an

agreement . . . are generally not 'indispensable' parties to a litigation under Rule 19(b)." (emphasis in original)). In short, Defendants will not be subject to double obligations, because Plaintiff is the sole obligee.

Finally, Defendants make much ado about Plaintiff's decision to "deliberately exclude[]" Canopius and Argo in order to preserve subject-matter jurisdiction. *See* Def.'s Mem. at 5. However, they do not cite a single authority suggesting that this is improper. Indeed, it is well established that when parties jointly breach a contract, or jointly violate a duty, the plaintiff may seek a remedy against any or all of the parties in court. *See LoCurto v. LoCurto*, No. 07-CV-8238, 2008 WL 4410091, at *7 (S.D.N.Y. Sep. 25, 2008) ("[A] plaintiff has the option of suing a joint obligor for breach of contract individually because joint obligors are jointly and severally liable, and the plaintiff can recover the full amount of damages to which he is entitled from any one of the joint obligors."); *NYKcool A.B. v. Pac. Fruit Inc.*, No. 10-CV-3867 (LAK) (AJP), 2010 WL 4812975, at *11 (S.D.N.Y. Nov. 24, 2010) ("[T]he [c]ourt is convinced that liability is based upon the breach of a single contract to which Pacific and Kelso were joint obligors. In such cases, the law permits [plaintiff] to recover the full amount of damages from either party."); *Hecht v. City of N.Y.*, 60 N.Y.2d 57, 62 (1983) ("When multiple tort-feasors are found to be liable for damages, . . . . [a] plaintiff may proceed against any or all defendants."); *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) ("[I]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit . . . .").

Defendants therefore fail to demonstrate that the case should be dismissed

under Rule 19.

**C. Claims as to Aon and Riviana**

Defendants last argue that Plaintiff's claims should be dismissed at least as to Defendants Aon and Riviana because the Complaint fails to give proper notice to these Defendants as to the basis of Plaintiff's recovery against them. Def.'s Mem. at 13–14. Notably, Defendants do not argue that Plaintiff failed to state a claim in quantum meruit, just that the Complaint did not sufficiently allege a connection to Aon and Riviana. *Id*; *see also* PMC Mot. at 2.

This argument is similarly meritless. The Complaint alleges that Defendant Aon, along with the two lead Lloyd's underwriters, participated in the loss adjustment under Defendant Riviana's insurance policy. Compl. ¶ 27. Crucially, the Complaint also alleges that both Aon and the Lloyd's Defendants approved Barbuss as a third-party recovery agent to hire Plaintiff to assist in the litigation against Monee Warehouse. *Id.* ¶¶ 29, 30. Similarly, the Complaint alleges that Defendant Riviana participated in approving Barbuss's hiring of Plaintiff for the subrogation action, and indeed, Riviana is the named plaintiff in that underlying litigation. *Id.* ¶ 32. Taking as true the facts alleged in the Complaint, and drawing all inferences from those facts in Plaintiff's favor, *see Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995), the Court finds that Plaintiff has sufficiently stated a claim as to both Aon and Riviana, just as it has for the Lloyd's Defendants.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Motion to Dismiss is DENIED.

SO ORDERED.

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated: September 8, 2026
Brooklyn, New York